Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
Kate Nicole G. Blanco (SBN: 331344)
kblanco@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Blvd., Suite 814
Long Beach, CA  90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Attorneys for Plaintiffs MICHAEL LEONE, JOSEPH TRESEDER, TRAVIS REECE, DAVID BEAVERS, FAZAL US SABOOR ALI, and KEISHA PINKNEY, as individuals and on behalf of all others similarly situated,

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEONE, JOSEPH TRESEDER, TRAVIS REECE, DAVID BEAVERS, FAZAL US SABOOR ALI, and KEISHA PINKNEY, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC., a California Corporation, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>[Assigned for All Purposes to The Honorable _____; Dept. _____]<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Complaint Filed:<br>Trial Date:<br><br>**REQUEST FOR JURY TRIAL** |

- 1 -

Plaintiffs MICHAEL LEONE, JOSEPH TRESEDER, TRAVIS REECE, DAVID BEAVERS, FAZAL US SABOOR ALI, and KEISHA PINKNEY (collectively, the "Plaintiffs"), as individuals and on behalf of all others similarly situated, complain and allege as follows:

## NATURE OF THE CASE

1.     This is a putative class action brought on behalf of Plaintiffs and all others similarly situated ("the Putative Class" or "Putative Class Members") which arises from the conduct and business practices of Defendant COINBASE, INC. ("Coinbase" or "Defendant") seeking equitable relief against Defendant and damages sustained by Plaintiffs and the Putative Class as a result of Defendant's actions as alleged herein.

2.     Defendant is a publicly-traded corporation involved in the business of cryptocurrency exchange. Defendant provides an online platform where consumers can store their currencies on a digital "wallet," as well as to buy, sell, spend, and trade cryptocurrency ("platform").

3.     Defendant holds itself out as a regulated and fully compliant entity, registered with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") as a Money Services Business, as that term is defined by FinCEN.

4.     Defendant further proclaims that it is "building the cryptoeconomy – a more fair, *accessible*, efficient, and transparent financial system enabled by crypto." "About Coinbase," *available at* https://www.coinbase.com/about (emphasis added). Defendant further touts,

> The company started in 2012 with the radical idea that anyone, anywhere, should be able to easily and securely send and receive Bitcoin. Today, Coinbase offers a trusted and easy-to-use platform for accessing the broader cryptoeconomy.
>
> *Ibid.*

5.      However, Plaintiffs allege that Defendant has, and continues to, engage in a scheme and course of conduct in which Defendant prevents its consumers from accessing their accounts and/or funds for arbitrary reasons and arbitrary amounts of time, and thereby causing Plaintiffs and the Putative Class to be unable to "invest, spend, save, earn, and use," or even withdraw their funds. *Ibid.*

6.      Plaintiffs and Putative Class Members that Defendant locked out of their accounts or denied access to their funds were often unable to access their accounts for long periods of time, including but not limited to a span of a month or more. As a result, Plaintiffs and Putative Class Members who were locked out of their accounts and/or deprived of access to their funds suffered a diminution in the value of their cryptocurrency upon eventually being granted access to such accounts.

7.      Despite claiming to implement safety measures to ensure that cryptocurrency is kept as safe as possible, Plaintiffs and Putative Class Members who eventually regained access to their accounts found that cryptocurrency had been removed from their accounts. In some circumstances, Putative Class Members' accounts were erased in their entirety. Further, Defendant failed to provide Putative Class Members any explanation for where their cryptocurrency went or any remedy to retrieve it, causing significant losses.

8.      Despite representing itself as a secure platform for exchanging cryptocurrency, Defendant's actions have caused damage and continue to cause damage to Plaintiffs and the Putative Class.

9.      Plaintiffs therefore seek any and all available relief, including equitable relief and recovery of damages caused by Defendants' actions.

## **THE PARTIES**

10.      Plaintiff MICHAEL LEONE is a resident of the State of California, and a former account holder with Defendant.

CLASS ACTION COMPLAINT

11.   Plaintiff JOSEPH TRESEDER is a resident of the State of Oklahoma, and a former account holder with Defendant.

12.   Plaintiff TRAVIS REECE is a resident of the State of Oklahoma, and a former account holder with Defendant.

13.   Plaintiff DAVID BEAVERS is a resident of the State of Michigan, and a former account holder with Defendant.

14.   Plaintiff FAZAL US SABOOR ALI is a resident of the State of New York, and a former account holder with Defendant.

15.   Plaintiff KEISHA PINKNEY is a resident of the State of Pennsylvania, and a former account holder with Defendant.

16.   Defendant COINBASE, INC. is a publicly-traded corporation which operates worldwide and maintains its principal executive offices in San Francisco, California.  At all times relevant hereto, Defendant Coinbase was and is engaged in the business of cryptocurrency exchange.

17.   DOES 1-10 are fictitiously named entities which may have liability under this action and should be made parties hereto, but whose identities are not known at this time.

## JURISDICTION AND VENUE

18.   This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1441, 1446, and 1453, because (i) the aggregate number of putative class members is 100 or greater; (ii) diversity of citizenship exists between one or more Plaintiffs and one or more Defendants; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interests and costs. (28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453.)

19.   This Court has personal jurisdiction over Defendants because they have significant minimum contacts with the State of California, and intentionally availed themselves of the laws of California, by (1) transacting a substantial

amount of business throughout the State, and (2) having its principal executive office in the City of San Francisco in the State of California. (California Secretary of State, Corporation – Statement of Information, Entity (File) Number C3548456.)

20.    Venue is proper in this Court under 28 U.S.C. § 1391(b). Defendants' principal executive office is located in, and Defendant does business in, the Northern District of California.

## FACTUAL ALLEGATIONS

21.    Defendant is a publicly-traded corporation involved in the business of cryptocurrency exchange. Defendant provides an online platform where consumers can store their currencies on a digital "wallet," as well as to buy, sell, spend, and trade cryptocurrency ("platform").

22.    Defendant advertises that "[a]pproximately 56 million verified users, 8,000 institutions, and 134,000 ecosystem partners in over 100 countries *trust* Coinbase to *easily and securely* invest, spend, save, earn, and use crypto." "About Coinbase, Coinbase powers the cryptoeconomy," *available at* https://www.coinbase.com/about (emphasis added).

23.    Defendant holds itself out as a regulated and fully compliant entity, registered with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") as a Money Services Business, as that term is defined by FinCEN. "Legal, Is Coinbase regulated?," *available at* https://www.coinbase.com/legal/faq.

24.    Defendant further proclaims that it is "building the cryptoeconomy – a more fair, *accessible*, efficient, and transparent financial system enabled by crypto." "About Coinbase," *available at*   https://www.coinbase.com/about (emphasis added). Defendant further touts,

The company started in 2012 with the radical idea that anyone, anywhere, should be able to easily and securely send and receive

Bitcoin. Today, Coinbase offers a trusted and easy-to-use platform for accessing the broader cryptoeconomy.

*Ibid.*

25.     In advertising its platform to potential consumers, Defendant claims that consumers should choose Coinbase because of its secure storage, and that it takes "careful measures to ensure that [Coinbase users'] bitcoin is as safe as possible." "Security for Your Peace of Mind," *available at* https://www.coinbase.com/security.

26.     As part of the "User Agreement" entered into by Defendant, Plaintiffs and Putative Class Members, Defendant owed Plaintiffs and the Putative Class a duty to provide access to the Coinbase platform to conduct authorized transactions, including but not limited to, accessing, investing, spending, saving, earning, using, selling, and/or withdrawing their funds.

27.     Plaintiffs are all consumers of Defendant Coinbase's cryptocurrency exchange platform.

28.     Plaintiff MICHAEL LEONE ("Plaintiff LEONE") deposited approximately fifteen thousand dollars ($15,000.00) in funds into his Coinbase account in or around December 2020. Plaintiff LEONE used these funds to purchase cryptocurrency. On or around January 6, 2021, when attempting to log into his Coinbase account, Plaintiff LEONE received an error message stating that his account was being reviewed, that the review process "usually takes a few days," and that he needed to verify his identity before being able to access his account. Plaintiff LEONE immediately completed all requested identity verification steps but remained locked out of his account. Plaintiff LEONE sent Defendant upwards of 100 emails to Defendant's customer service email address, but never received a response. On or around January 9, 2021, Plaintiff LEONE filed an official complaint with Defendant, but never received a response. Plaintiff LEONE was locked out of his Coinbase account for several months, unable to

access his funds, or engage in any authorized transactions including but not limited to, investing, spending, saving, earning, using, selling or withdrawing his cryptocurrencies.

29.    Plaintiff JOSEPH TRESEDER ("Plaintiff TRESEDER") deposited approximately thirty thousand dollars ($30,000.00) in funds into his Coinbase account in or around December 2020 to purchase Ripple cryptocurrency, which trades under the symbol "XRP." In or around mid to late January 2021, when attempting to log into his Coinbase account, Plaintiff TRESEDER received an error message that his username and password were invalid. Plaintiff TRESEDER requested an email to reset his password, which never arrived. Plaintiff TRESEDER immediately called a number provided as Defendant's "Customer Support" phone number and was informed that Defendant could only lock his account, not unlock it. Plaintiff TRESEDER filed an official complaint with Defendant to regain access to his account and funds. Despite sending multiple emails requesting an update from Defendant, Plaintiff TRESEDER received only two automatic responses in which Defendant informed him that the issue was "under review." Defendant eventually reached out to Plaintiff TRESEDER and stated that he needed to verify his identity before being able to access his account, by logging into the very account from which he was locked out to verify his email address, phone number, and password. Plaintiff TRESEDER completed Defendant's requested identity verification steps, but remained locked out of his account. Plaintiff TRESEDER was locked out of his Coinbase account for several months, unable to access his funds, or engage in any authorized transactions, including but not limited to, investing, spending, saving, earning, using, selling or withdrawing his cryptocurrencies.

30.    Plaintiff TRAVIS REECE ("Plaintiff REECE") opened a Coinbase account in or around February 2021, in which he deposited previously-owned cryptocurrency into Defendant's platform. After making the deposit, Plaintiff

REECE logged into his Coinbase account and noticed that the cryptocurrency he had deposited was missing from his account on Defendant's platform. Plaintiff REECE contacted Defendant regarding his missing cryptocurrency. In response, Defendant informed him that he needed to verify his identity before he can be given access to his funds. Specifically, Defendant required Plaintiff REECE to transfer one thousand four hundred (1,400) Stellar Lumens cryptocurrency, which trades under the symbol "XLM," worth approximately eight hundred thirty dollars ($830.00) to his Coinbase account in order to verify his identity. Between February 2021 and May 2021, Plaintiff REECE reached out to Coinbase's customer service email address multiple times regarding other methods of proving his identity, and filed an official complaint regarding this issue and the issue of regaining access to his account. Plaintiff REECE had no access to the funds he deposited to his Coinbase account for several months, unable to engage in any authorized transactions, including but not limited to, investing, spending, saving, earning, using, selling or withdrawing his cryptocurrencies.

31. Plaintiff DAVID BEAVERS ("Plaintiff BEAVERS") opened a Coinbase account in or around 2020 and purchased cryptocurrency for several thousand dollars. On January 23, 2021, Plaintiff BEAVERS contacted Defendant regarding what appeared to be mistaken one hundred dollar ($100.00) charges from Defendant. Defendant responded by stating that Plaintiff BEAVERS would be locked out of his account, which in fact occurred. Plaintiff BEAVERS immediately made an inquiry to Defendant's "help desk," wherein he was informed that he would receive a response within 4-5 days. After approximately ten (10) days with no response, Plaintiff BEAVERS submitted "tickets" to Defendant's "help desk" approximately three (3) additional times, with no response to any of his inquiries. On or around February 23, 2021, Plaintiff BEAVERS filed an official complaint with Defendant. Plaintiff BEAVERS was locked out of his Coinbase account for over a month, unable to access his funds, or

engage in any authorized transactions including but not limited to, investing, spending, saving, earning, using, selling or withdrawing his cryptocurrencies.

32.    Plaintiff FAZAL US SABOOR ALI ("Plaintiff ALI") opened a Coinbase account in or around 2018, purchased cryptocurrency from Coinbase, and kept the currency in his Coinbase account. In or around early January 2021, after logging into his Coinbase account, Plaintiff ALI found that he was unable to engage in any authorized transactions, including but not limited to, spending, selling or withdrawing his cryptocurrencies. Plaintiff ALI received an automated message indicating that his account was locked and under manual review, which would take approximately 2 to 3 days. On January 19, 2021, given the lack of any response from Defendant, Plaintiff ALI filed a complaint with Defendant. Defendant responded that it would provide a response to Plaintiff ALI's complaint in two (2) business days. In an effort to get a response, Plaintiff ALI submitted additional complaints on January 29, 2021, February 7, 2021, and February 20, 2021, but did not receive a substantive response to any of his inquiries from Defendant. On February 20, 2021, Defendant responded by stating that it had consolidated the four (4) complaints filed by Plaintiff ALI. Plaintiff ALI was locked out of his Coinbase account for over three (3) months, unable to access his funds, or engage in any authorized transactions including but not limited to, investing, spending, saving, earning, using, selling or withdrawing his cryptocurrencies.

33.    Plaintiff KEISHA PINKNEY ("Plaintiff PINKNEY") purchased approximately six thousand dollars ($6,000.00) in multiple types of cryptocurrencies using Coinbase in or around 2020. On February 4, 2021, when attempting to log into her Coinbase account, Plaintiff PINKNEY discovered that her account had been locked, and that she could not access her funds. Plaintiff PINKNEY immediately submitted an official complaint to Defendant, who responded that her account was "cleared" and she should have access to it.

However, despite multiple requests, Plaintiff PINKNEY continued to receive error messages each time she attempted to access her account. As a result, Plaintiff PINKNEY submitted an additional official complaint to Defendant. Plaintiff PINKNEY was locked out of her Coinbase account for several months, unable to access her funds, or engage in any authorized transactions including but not limited to, investing, spending, saving, earning, using, selling or withdrawing his cryptocurrencies. To date, Plaintiff PINKNEY remains unable to access her Coinbase account and/or funds in her Coinbase account.

34.    Plaintiffs and the Putative Class have been locked out of their own accounts and/or denied access to their funds by Defendant for reasons not disclosed to Plaintiff and Putative Class, and/or claiming that their accounts were not secure and must thereby undergo another identity verification process despite completing that same identify verification process during their initial Coinbase account registration. "Legal: Coinbase User Agreement, Part 1: General Use, 1. Account Setup, 1.4 Identity Verification," *available at* https://www.coinbase.com/legal/user_agreement/united_states.

35.    Plaintiffs and the Putative Class remained locked out of their accounts and/or denied access to their accounts despite numerous attempts at contacting Defendant's customer support, even after full compliance with Coinbase's identity verification requirements.

36.    Cryptocurrency is considered volatile, as is known by Defendant and expressly stated in Defendant's website: "As a newer asset class, crypto is widely considered to be volatile — with the potential for significant upward and downward movements over *shorter time periods*." "Crypto Basics: What is volatility?," *available at* https://www.coinbase.com/learn/crypto-basics/what-is-volatility (emphasis added).

/ / /

/ / /

37.   Plaintiffs and Putative Class Members that Defendant locked out of their accounts and/or denied access to their funds were often unable to access their accounts for a month or more. As a result, Plaintiffs and Putative Class Members who were locked out and were eventually permitted access to their accounts find that the value of their cryptocurrency had dropped significantly in the interim and/or they had no ability to sell or in any way use the cryptocurrency held in their Coinbase accounts.

38.   As further result of Defendant locking Plaintiffs and Putative Class Members out of their accounts and/or denying access to their funds, Plaintiffs and Putative Class Members were victims of Defendant's actions were deprived use of their funds for long periods of time, and could not engage in any authorized transactions including but not limited to, investing, spending, saving, earning, using, selling or withdrawing their cryptocurrencies.

39.   Despite claiming to implement safety measures to ensure that cryptocurrency is kept as safe as possible, in some cases, Plaintiffs and Putative Class Members who eventually regained access to their accounts and/or funds found that cryptocurrency had disappeared from their accounts. In some circumstances, Plaintiffs and Putative Class Members' accounts are erased in their entirety without explanation from Defendant.

40.   As part of the "User Agreement" entered into by Defendant, Plaintiffs and Putative Class Members, Coinbase combines the balance of their customers' "wallets" and hold such funds in a U.S. FDIC-insured bank, or invest those funds in liquid investments, the interest and earnings from which are solely kept and owned by Coinbase. "Legal: Coinbase User Agreement, Part 1: General Use, 2. Wallet and Custodial Services, 2.7 USD Wallet," *available at* https://www.coinbase.com/legal/user_agreement/united_states. As a result of locking out Plaintiffs and the Putative Class Members from their accounts unable to withdraw or use their funds in any way, Defendant was unjustly enriched by

retaining the use of these funds, including the accrual of interest on Plaintiffs' and the Putative Class' deposited funds and assets.

41.     Defendant's actions have resulted in irreparable harm to Plaintiffs and the Putative Class.

## <u>CLASS ALLEGATIONS</u>

42.     This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 3.765 of the California Rules of Court.

43.     Plaintiff seeks certification of a Class pursuant to Federal Rules of Civil Procedure Rule 23 and California Civil Code section 1781(a), which is composed of and defined as follows:

**CLASS:**  All current and former Coinbase account users and/or consumers in the United States who registered for a Coinbase account at any time on or after the day four years prior to the date on which this Complaint is filed, who maintained funds and/or cryptocurrency in their Coinbase accounts, and were subsequently prevented from accessing their Coinbase account and/or deprived of access to their funds or cryptocurrency for any measure of time by Defendant, and were damaged by Defendant's conduct.

44.      The members of the Putative Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

45.     There are questions of law and fact common to the members of the Putative Class that predominate over questions affecting only individuals.  These common questions include, but are not limited to:

A. Whether Defendant owed duties to Plaintiffs and the Putative Class, the scope of those duties, and whether Defendant breached those duties;

B. Whether Defendant's conduct was unfair or unlawful;

C. Whether Defendant engaged in deceptive conduct;

D. Whether Defendant has converted the funds belonging to Plaintiffs and the Putative Class;

/ / /

CLASS ACTION COMPLAINT

E. Whether Defendant has been unjustly enriched as a result of their conduct of locking out Plaintiff and the Putative Class from their Coinbase accounts; and

F. Whether Plaintiffs and the Putative Class are entitled to damages as a result of Defendants' wrongful conduct;

G. Whether injunctive relief is appropriate.

46. Each of the Plaintiffs' claims are typical of the claims of the members of the Putative Class which they represent, because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiffs.

47. Plaintiffs have no interests antagonistic to those of the Putative Class.

48. The Putative Class, of which Plaintiffs are each a member, is readily identifiable.

49. Plaintiffs will fairly and adequately protect the interests of the Putative Class and have retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has experience in handling class actions, other complex litigation, and claims of consumers.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Putative Class are significant, the amount is modest compared to the expense and burden of individual litigation.

51. The questions of law or fact common to the members of the Putative Class predominate over any questions affecting only individual members.

52. The prosecution of separate actions by individual members of the Putative Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action,

or the prosecution of separate actions by individual members of the Putative Class would create the risk that adjudications with respect to individual members of the Putative Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

53.     Defendant has acted, or refused to act, on grounds generally applicable to Plaintiffs and Putative Class Members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Putative Class as a whole.

54.     A class action will cause an orderly and expeditious administration of the claims of the Putative Class, and will foster economies of time, effort and expense.

55.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FIRST COUNT

### (Negligence)

56.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

57.     Defendant knew or should have known of the likelihood of potential security breaches and other reasons that may result in Plaintiffs and Putative Class Members being locked out of their Coinbase accounts and/or being denied access to their funds.

58.     Defendant had a duty to provide Plaintiffs and the Putative Class with access to their Coinbase accounts and/or funds.

59.     As a company that holds itself as one that "powers the cryptoeconomy" with 56 million verified users, 8,000 institutions, and 134,000 ecosystem partners in over 100 countries [that] *trust* Coinbase to *easily and*

- 14 -

*securely* invest, spend, save, earn, and use crypto," Defendant had a duty to develop, design, test, and monitor their consumers' access to their Coinbase accounts and/or funds, as well as to create and maintain procedures that would limit disruption to account holders' ability to access their Coinbase accounts and/or funds. Defendant had a duty to meet its promises and obligations to its millions of consumers.

60.    Given the nature of Defendant's business, Defendant also owed Plaintiffs and the Putative Class a duty to provide access to their Coinbase accounts and/or funds.

61.    Defendant breached its duties to Plaintiffs and the Putative Class by denying them access to their accounts and/ or funds for long periods of time in a market that it knows to be volatile thereby denying Plaintiffs and Putative Class Members from their own funds and assets.

62.    Defendant further breached its duties by intentionally and/or negligently failing to provide an adequate and timely resolution to Plaintiffs' and the Putative Class' inability to access their accounts and/or funds and intentionally and/or negligently failing to respond in a timely fashion to the complaints of Plaintiffs and the Putative Class filed with Defendant's Customer Support.

63.    Defendant further breached its duties by failing to promptly enable access to Plaintiffs and the Putative Class accounts and/or funds, especially upon their compliance with Defendant's identity verification requirements.

64.    To the extent that Plaintiffs and the Putative Class were locked out of their Coinbase accounts and/or denied access to their funds due to a security breach, Defendant breached its duty to provide a safe and secure platform for Plaintiffs and the Putative Class and/or to inform Plaintiffs and Putative Class Members of such breach.

/ / /

/ / /

CLASS ACTION COMPLAINT

65.     Defendant's conduct amounted to gross negligence where they breached the duties as alleged herein and by failing to create and enforce an adequate plan to prevent security breaches and lock outs that prevent Plaintiffs and the Putative Class from accessing their Coinbase accounts and/or funds where they know that, "[a]s a newer asset class, crypto is widely considered to be volatile – with the potential for significant upward and downward movements over *shorter* time periods*," and knew or should have known that their breaches would likely inflict substantial damages upon its consumers.

66.     Defendant's conduct further amounted to gross negligence where, despite its knowledge, it failed to act on the information regarding Plaintiffs and Putative Class Members being locked out of their accounts and/or denied access to their funds for extended periods of time as evidenced by multiple complaints lodged by Plaintiffs and the Putative Class.

67.     Defendant's acts and omissions that resulted in Plaintiffs and the Putative Class from being locked out of their accounts and/or funds for extended periods of time, even after undergoing additional identity verification, constitute extreme departures from the ordinary standard of care, especially here where a volatile asset is involved.

68.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs and the Putative Class sustained damages as alleged herein. Plaintiffs and Putative Class Members are entitled to damages, pre-judgment interest, attorney's fees and costs pursuant to California Civil Code section 1021.5, or as otherwise provided by statute or contract.

## SECOND COUNT

### (Breach of Fiduciary Duty)

69.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

/ / /

70.    As a Money Transmitter and holder of Plaintiffs' and the Putative Class's accounts, Defendant owed a fiduciary duty to act to protect the rights and interests of Plaintiffs and the Putative Class. Plaintiffs and the Putative Class trusted Defendant to provide the services it advertised and promised, including providing them with access to their accounts and funds, access to their digital wallets, or to buy, sell, use, exchange, or withdraw their cryptocurrencies.

71.    Defendant had a duty to Plaintiffs and the Putative Class to act with the utmost good faith in the best interests of Plaintiffs and Putative Class Members.

72.    Defendant breached those duties by failing to perform its obligations, including by actively preventing Plaintiffs and the Putative Class from accessing their accounts and/or funds.

73.    Defendant further failed to act with utmost good faith by ignoring Plaintiffs' and the Putative Class' repeated emails and complaints to address their concerns, especially with regard to providing them access to their Coinbase accounts and/or funds. Defendant failed to act in the best interests of Plaintiffs and the Putative Class by failing to provide adequate Customer Support and allowing a long period of time, including but not limited to over a month or more, to pass before Plaintiffs and the Putative Class could regain access to their accounts and/or funds.

74.    As a direct and proximate cause of Defendant's breach of its fiduciary duties, Plaintiffs and the Putative Class sustained damages as alleged herein. Plaintiffs and Putative Class Members are entitled to damages, pre-judgment interest, attorney's fees and costs pursuant to California Civil Code section 1021.5, or as otherwise provided by statute or contract.

## THIRD COUNT

### (Breach of Contract)

75.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

76.     Plaintiff and the Putative Class entered into written agreements with Defendant, specifically a "User Agreement" upon their registration for a Coinbase account. Attached herein as **Exhibit A**" is a true and correct copy of the "Coinbase User Agreement," last updated April 9, 2021, *available at* https://www.coinbase.com/legal/user_agreement/united_states.     Plaintiff and Putative Class Members were presented this agreement on a take-it-or-leave it basis, or slightly modified versions thereof, when opening their Coinbase accounts.

77.     Defendant breached its User Agreements by, among other things, failing to discharge its obligations and provide services it promised such as (1) consumers' access to their Coinbase accounts and/or funds; (2) safety and security of consumers' accounts and funds; (3) creating and implementing an adequate plan and/or procedure that would limit disruption to account holders' ability to access their Coinbase accounts and/or funds, and engage in their authorized use; and (4) reinstating consumers' access to their accounts and/or funds, upon the prompt verification of their identities.

78.     Plaintiffs and the Putative Class, as part of their agreement to open an account with Defendant, complied with Defendant's "Identify Verification" procedures.

79.     Plaintiffs and the Putative Class also completed additional "Identity Verification" procedures as requested by Defendant in order to regain access to their accounts and/or funds, once they had been locked out.

80.     Defendant nevertheless failed to provide Plaintiffs and the Putative Class access to their accounts and/or funds, despite their compliance with the "Identity Verification" requirements of the User Agreement and failed to respond to Plaintiffs and the Putative Class complaints in a timely fashion to address ongoing account lock outs.

81.     As a result of Defendant's breach of its duties, obligations and/or promises, Plaintiffs and the Putative Class were harmed, including but not limited

- 18 -

to the loss of use of their Coinbase accounts and/or funds, for long periods of time, inability to access their funds, inability to withdraw their funds, and diminution of the value of their funds. Plaintiffs and the Putative Class also suffered additional damages such as nominal damages, and damages in reliance to the agreement.

82.    As a direct and proximate cause of Defendant's breach of its fiduciary duties, Plaintiffs and the Putative Class sustained damages as alleged herein, including attorney's fees and costs as provided by contract (Exhibit A). Plaintiffs and Putative Class Members are entitled to damages, pre-judgment interest, attorney's fees and costs pursuant to California Civil Code section 1021.5, or as otherwise provided by statute or contract.

## FOURTH COUNT
### (Unjust Enrichment)

83.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

84.    Plaintiffs and the Putative Class conferred a benefit upon Defendant by depositing currency and cryptocurrency into Defendant's platform.

85.    As part of the "User Agreement" entered into by Defendant, Plaintiffs and Putative Class Members, Coinbase combines the balance of their customers' "wallets" and hold such funds in a U.S. FDIC-insured bank, or invest those funds in liquid investments, the interest and earnings from which are solely kept and owned by Coinbase. "Legal: Coinbase User Agreement, Part 1: General Use, 2. Wallet and Custodial Services, 2.7 USD Wallet," *available at* https://www.coinbase.com/legal/user_agreement/united_states.

86.    During the time in which Plaintiffs and the Putative Class were prevented from accessing their funds, Defendant was unjustly enriched by retaining the use of these funds, including the accrual of interest on Plaintiffs' and the Putative Class' deposited funds and assets, such as the funds deposited by Plaintiffs and the Putative Class' Coinbase USD Wallets.

87.     As a result of Defendant's acts and omissions as alleged herein, Defendant has unjustly received and retained benefits at the expense of Plaintiffs and the Putative Class. Under principles of equity and good conscience, Defendant should not be permitted to retain valuable funds belonging to Plaintiffs and the Putative Class, and to disgorge the benefits and profits gained as a result of its unlawful acts and omissions.

88.     Plaintiffs and the Putative Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant, attorney's fees and costs pursuant to California Civil Code section 1021.5, or as otherwise provided by statute or contract and for such other relief that this Court deems just and proper.

## FIFTH COUNT

### (Conversion)

89.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

90.     Defendant has asserted dominion and control over Plaintiffs' and the Putative Class's accounts and funds, by preventing their access. In several such cases, where Plaintiffs and Putative Class Members regained access to their accounts, they found that their accounts had been completely depleted. Plaintiffs and the Putative Class allege that Coinbase liquidated their accounts to its own benefit.

91.     As a direct and proximate cause of Defendant's conduct, Plaintiffs and the Putative Class have been irreparably damaged.

92.     Plaintiffs and the Putative Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant, attorney's fees and costs pursuant to California Civil Code section 1021.5, or as otherwise provided by statute or contract and for such other relief that this Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH COUNT

### (Violation of the Unfair Competition Law)

93.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

94.    Business and Professions Code section 17200, *et seq*., also known as the Unfair Competition Law ("UCL"), prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

95.    Business and Professions Code section 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the UCL.

96.    Defendant's acts and omissions as alleged herein, including its breach of its fiduciary duties to its consumers, serve as unlawful predicate acts and practices for purposes of Business and Professions Code sections 17200, *et seq*., and are not outweighed by any countervailing benefits to consumers.

97.    As a result of these actions, including locking out Plaintiffs and the Putative Class from accessing their account and preventing them from having any authorized use of their funds, Defendant is able to unfairly compete with other comparable companies in violation of Business and Professions Code sections 17000, *et seq*. and 17200, *et seq*.  Due to these unlawful, unfair, and/or fraudulent business practices, Defendant has gained a competitive advantage over other comparable companies.

98.    The victims of these unlawful, unfair, and/or fraudulent business practices include, but are not limited to, Plaintiffs and the Putative Class, competing cryptocurrency exchange platforms providing similar services as Defendant, and the general public. Plaintiffs are informed and believe, and based thereon alleges, that Defendant performed the alleged acts with the intent of gaining an unfair competitive advantage and thereby injuring Plaintiffs and the Putative Class, other competitors, and the general public.

99.    Plaintiff's success in this action will enforce important rights affecting the public interest and public policy.  In this regard, Plaintiffs sue on behalf of themselves and the public.

100.    Business and Professions Code section 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendant from repeating their unlawful, unfair, and fraudulent business acts and business practices alleged above.

101.    Business and Professions Code section 17203 provides that the Court may restore to any person in interest, any money or property that may have been acquired by means of such unfair competition. Plaintiff and the Putative Class are entitled to restitution pursuant to Business and Professions Code section 17203 for their funds deposited in the Coinbase platform and were unlawfully withheld from them when locked out of long periods of time, the losses incurred as a result of Plaintiffs and the Putative Class being locked out of their accounts and/or funds, and the fair value of other losses alleged herein, during the four-year period prior to the filing of this complaint. All remedies are cumulative pursuant to Business and Professions Code section 17205.

102.    Business    and    Professions    Code    section    17202    provides: "Notwithstanding section 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Plaintiffs and the Putative Class are entitled to enforce all applicable penalty provisions of the Labor Code pursuant to Business and Professions Code section 17202.

103.    Plaintiffs and the Putative Class request injunctive relief pursuant to Business and Professions Code section 17203 to enjoin Defendant from continuing the unfair/unlawful business practices alleged herein.

104.   Plaintiffs herein take upon enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action. The action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiffs by forcing Plaintiffs to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure section 1021.5.

## SEVENTH COUNT

### (Violations of the Consumers Legal Remedies Act)

105.   Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint as if fully set forth herein.

106.   Defendant's acts and omissions as alleged herein were intended to deceive Plaintiffs and the Putative Class, and have resulted in harm to Plaintiffs and the Putative Class.

107.   Defendant's actions as alleged herein violated, and continue to violate, California Civil Code section 1750, *et seq.* also known as the Consumers Legal Remedies Act ("CLRA") including section 1770(a)(5) for making representations that their services have characteristics, uses, or benefits which they do not, section 1770(a)(7) for making representations that their services are of a particular quality, which they are not, and section 1770(a)(9) for advertising services with intent not to sell them as advertised.

108.   Pursuant to California Civil Code section 1782, attached herein as "**Exhibit B**" is a true and correct copy of Plaintiff's Notice of Violation of the California Consumer Legal Remedies Act (California Civil Code section 1750 *et seq.*) sent to Defendant on June 4, 2021. Once the time period set forth in California Civil Code section 1782(a) have expired after providing Notice and Demand to Defendant, Plaintiffs will amend this cause of action to seek recovery of damages pursuant to California Civil Code section 1782(d).

/ / /

CLASS ACTION COMPLAINT

109.   Defendant's acts and omissions occurred in the County of San Francisco and Defendant maintains its principal place of business in the County of San Francisco. This action is brought in the California Northern District Court which presides over matters in the County of San Francisco. Attached hereto as "**Exhibit C**" are affidavits from the named Plaintiffs in this action setting forth facts showing this district is the proper place for trial pursuant to California Civil Code section 1780(d).

110.   Pursuant to California Civil Code section 1780(a), Plaintiff and the Putative Class are entitled to an order enjoining Defendant's wrongful acts alleged herein, an order awarding the payment of costs and attorneys' fees pursuant to California Civil Code section 1780(e), and for such other relief that this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully pray for relief as follows:

a.   An order certifying the Class for declaratory and injunctive relief and for money damages under Federal Rules of Civil Procedure Rule 23 and California Civil Code section 1781(a), and appointing Plaintiffs as Class Representatives, and appointing their attorneys as Class Counsel;

b.   A judgment for actual damages;

c.   A judgment for compensatory damages;

d.   A judgment for disgorgement of profits;

e.   A declaratory judgment that Defendant violated the UCL and CLRA;

f.   A judgment for injunctive relief enjoining Defendant from engaging in future unlawful activities complained of herein, including violations of the UCL and CLRA; orders Defendant engage in a corrective notice campaign, and requiring Defendant to refund to

Plaintiffs and others similarly situated any funds paid;

g.   An accounting of all amounts that Defendant unjustly received, retained, and/or collected as a result of its unlawful acts and omissions;

h.   A judgment for exemplary and punitive damages for Defendant's knowing, willful, and intentional conduct;

i.   Pre-judgment and post-judgment interests;

j.   A judgment for reasonable attorney fees and costs of this suit, pursuant to contract, the UCL, California Civil Code section 1780(e), California Civil Code section 1021.5, and any other applicable statute; and

k.   A judgment for all such other and further relief as the Court deems equitable and just.

Dated: June 4, 2021          **MAHONEY LAW GROUP, APC**

_____

Kevin Mahoney, Esq.
Katherine J. Odenbreit, Esq.
Kate Nicole G. Blanco, Esq.
Attorneys for Plaintiffs MICHAEL LEONE, JOSEPH TRESEDER, TRAVIS REECE, DAVID BEAVERS, FAZAL US FABOOR ALI, and KEISHA PINKNEY, as individuals and on behalf of all others similarly situated

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues subject to trial.

Dated: June 4, 2021                    **MAHONEY LAW GROUP, APC**

_____
Kevin Mahoney, Esq.
Katherine J. Odenbreit, Esq.
Kate Nicole G. Blanco, Esq.
Attorneys for Plaintiffs MICHAEL LEONE,
JOSEPH TRESEDER, TRAVIS REECE, DAVID
BEAVERS, FAZAL US FABOOR ALI, and
KEISHA PINKNEY, as individuals and on behalf
of all others similarly situated

CLASS ACTION COMPLAINT